NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JUAN JAVIER ORTIZ, *Appellant.*

No. 1 CA-CR 25-0245

FILED 07-21-2026

Appeal from the Superior Court in Mohave County
No. CR-2024-00133
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Christine Davis
*Counsel for Appellee*

Jill L. Evans, Flagstaff
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Andrew J. Becke and Judge Kent E. Cattani joined.

**T H U M M A**, Judge:

**¶1**         Defendant Juan Javier Ortiz appeals his convictions and sentences for the murder of S.B.[1] and related offenses. Because Ortiz has shown no error, his convictions and sentences are affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2**         One night in January 2024, shortly after 8:00 p.m., Arizona Department of Public Safety (DPS) Detective Shed conducted a traffic stop in Kingman. He pulled over a black Ford Expedition with a male driver, later identified as Ortiz. Detective Shed recognized Ortiz' vehicle as one that fled from him earlier in January 2024. Ortiz parked inside a self-serve car wash bay. Detective Shed parked his unmarked blue Dodge Charger in front of Ortiz' vehicle. DPS Detective Upton arrived, also in an unmarked police car, and parked behind Ortiz' vehicle. A third DPS officer, Detective Cortez, then arrived in his unmarked car and parked in the parking lot.

**¶3**         Ortiz got out of his vehicle but, when Detective Shed called out, Ortiz got back inside his vehicle. Detective Shed told Ortiz to stop. But Ortiz reversed his vehicle, hit Detective Upton's car, drove forward into Detective Shed's blue Charger, and drove away.

**¶4**         Several DPS officers chased Ortiz, at times activating their emergency lights and sirens. As Ortiz was driving west on Bank Street, he ran a stop sign and hit a car, killing the driver, S.B. Ortiz suffered minor injuries, refused medical care and was taken into custody. Ortiz was indicted on one count of first-degree felony murder, two counts of aggravated assault, one count of unlawful flight from a pursuing law enforcement vehicle and one count of criminal damage.

**¶5**         The State filed a motion seeking an advance admissibility determination under Arizona Rule of Evidence 404(b) about Ortiz' prior evasions from law enforcement. The State sought to admit evidence that, on two separate occasions before the charged offenses, Ortiz fled from law enforcement. The State asserted the flight events occurred in 2010, then again in January 2024, three weeks before the charged offenses. Ortiz countered with a motion in limine, arguing the "other act evidence" was "improper."

---

[1] Initials are used to protect the victim's privacy. *State v. Maldonado*, 206 Ariz. 339, 341 ¶ 2 n.1 (App. 2003).

¶6            After oral argument, the court found evidence of the January 2024 flight was relevant to show Ortiz knew that he was evading a law enforcement vehicle, and that its probative value was not substantially outweighed by a danger of unfair prejudice. The court, however, rejected evidence of the 2010 flight because it was too remote.

¶7            At oral argument, the State indicated that it intended to offer evidence that, at the time of the charged offenses, "there was a valid felony parole warrant" for Ortiz' arrest. Counsel for Ortiz responded that he would address it separately with the State. Deferring any ruling on the issue, the court encouraged the parties to see if they could reach an agreement on the warrant evidence, commenting that the evidence probably was relevant to the unlawful flight charge and, if presented tersely, would "probably not [be] terribly prejudicial."

¶8            During a five-day trial that began in February 2025, the State called various witnesses, including the officers involved. Without objection, Detective Shed testified that he knew Ortiz had an outstanding "valid felony warrant" at the time of the flight incident earlier in January 2024. Also without objection, Detective Shed testified that, when he saw the black Ford Expedition Ortiz was driving on the day of the offenses, he requested assistance to stop the vehicle "because I had known the individual had a felony warrant and it was known that he had fled from me in the past."

¶9            Although the blue Dodge Charger is an unmarked car, Detective Shed testified without objection that it "stands out," adding that "[o]nce I make a traffic stop in it, everybody usually knows it," and agreeing that he believed "even though it's not marked, . . . it's well known in the area." Detective Shed also testified, over a relevance objection, that he had "people walking up to our [unmarked] patrol cars, taking pictures of them. I have debriefed individuals that say those pictures get passed around within the community saying kind of like who – or to watch out for the unmarked cars any time we get a new patrol vehicle."

¶10           After the State rested in its case in chief, Ortiz unsuccessfully moved for a judgment of acquittal. *See* Ariz. R. Crim. P. 20 (2026).[2] Ortiz did not testify or present any evidence, and after deliberating, the jury found him guilty as charged. The jury then found as aggravating circumstances, for the aggravated assault convictions, that the victims were peace officers

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

and that those offenses were dangerous offenses. The jury also found that Ortiz committed the offenses while on community supervision.

¶11         The court later sentenced Ortiz to life in prison without the possibility of release for the first-degree murder conviction and a concurrent five year prison term for the unlawful flight conviction, with 475 days presentence incarceration credit; a consecutive 15.75 year prison term for one aggravated assault conviction, with a concurrent five year prison term for the criminal damage conviction; and another consecutive 15.75 year prison term for the other aggravated assault conviction.

¶12         This court has jurisdiction over Ortiz' timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S) sections 12-120.21(A)(1), 13-4031 and 13-4033(A).

**DISCUSSION**

¶13         When a timely objection is made, this court reviews a superior court's "decision to admit evidence of other acts for an abuse of discretion," *State v. Hausner*, 230 Ariz. 60, 78 ¶ 68 (2012) (citation omitted), recognizing an admissibility "ruling will not be disturbed absent a clear abuse of that discretion," *State v. Kiper*, 181 Ariz. 62, 65 (App. 1994) (citation omitted). Failure to timely object results in review for fundamental error. *See State v. Strong*, 258 Ariz. 184, 210 ¶ 111 (2024). Ortiz "bears the burden to establish that '(1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice.'" *State v. Bearup*, 221 Ariz. 163, 168 ¶ 21 (2009) (citation omitted); *accord State v. Escalante*, 245 Ariz. 135, 142 ¶ 21 (2018).

**I.     Ortiz Has Not Shown the Court Erred in Admitting Evidence.**

   **A.     The Superior Court Did Not Abuse Its Discretion by Admitting Flight Evidence.[3]**

¶14         Ortiz argues the State improperly used the flight evidence from earlier in January 2024 to show he had a "propensity to flee from police," an improper purpose. *See* Ariz. R. Evid. 404(b). Ortiz also argues the evidence should have been excluded because "its probative value was

---

[3] The State argues, with some force, that Ortiz did not preserve the objections addressed here in superior court, which would limit the review on appeal for fundamental error. *See* Ariz. R. Evid. 103(e). Because Ortiz has shown no error, under either fundamental error or abuse of discretion, this court need not resolve the State's argument.

substantially outweighed" by the danger of unfair prejudice. *See* Ariz. R. Evid. 403. Ortiz alleges the evidence violated his right to a fair trial.

¶15　　　　Although other act evidence "is not admissible for the purpose of proving action in conformity therewith on a particular occasion," Ariz. R. Evid. 404(a), it may "be admissible for other purposes, such as . . . intent [or] knowledge," Ariz. R. Evid. 404(b)(2). To be admissible, "a proper purpose must be shown under Rule 404(b), it must be relevant under Rule 402 [and] the probative value of the evidence must not be substantially outweighed by its potential prejudicial effect under Rule 403." *State v. Acuna Valenzuela*, 245 Ariz. 197, 207 ¶ 12 (2018) (citations omitted).[4]

¶16　　　　The flight evidence was relevant, given that the State was required to prove that Ortiz willfully fled or attempted to elude a pursing official law enforcement vehicle. A.R.S. § 28-622.01. Among other things, both for the prior flight and the unlawful flight charge here, Ortiz fled from the same unmarked blue Dodge Charger. That fact was relevant to whether Ortiz "knew that the vehicle was an official law enforcement vehicle," one path to proving the unlawful flight charge. A.R.S. § 28-622.01(2)(b); *accord* Ariz. R. Evid. 401 (evidence is relevant if it has "any tendency" to make a fact of consequence more or less probable). Moreover, Ortiz has not shown that the flight evidence had an "undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror," *State v. Mott*, 187 Ariz. 536, 545 (1997) (citation omitted), or that it otherwise was inadmissible under Rule 403. Accordingly, he has shown no error in the admission of the flight evidence or that its admission violated his right to a fair trial.

####　　B.　　The Superior Court Did Not Err in Admitting Testimony that Others in the Community Recognized Detective Shed's Unmarked Blue Dodge Charger as a Police Vehicle.

¶17　　　　At trial, Detective Shed testified that his unmarked blue Dodge Charger was well known in the area as a police vehicle. Over Ortiz' relevance objection, Detective Shed testified that his blue Dodge Charger:

> [C]ould be just parked anywhere, and I've had
> people slow down, look at us, kind of trying to
> figure out what was going on. I've had so much

---

[4] When requested, the court also must give a proper limiting instruction for other act evidence that is admissible at trial. *See id.* (citing Ariz. R. Evid. 105). Ortiz did not request such a limiting instruction.

5

> as people walking up to our patrol cars, taking pictures of them. I have debriefed individuals that say those pictures get passed around within the community saying kind of like who – or to watch out for the unmarked cars any time we get a new patrol vehicle.

Ortiz alleges this testimony was irrelevant and, even if minimally relevant, "was unfairly prejudicial." *See* Ariz. R. Evid. 401, 403. Ortiz claims "[t]here was no evidence that any of those unknown people had told Ortiz about it, or had any relation to Ortiz, or that Ortiz had seen a picture of it identified as a police car."

**¶18**        Here, the testimony was relevant to whether Detective Shed's unmarked vehicle was recognizable as a police vehicle, a fact relevant to the unlawful flight charge. *See* A.R.S. § 28-622.01(2)(b); *see also* Ariz. R. Evid. 401. And Ortiz has not shown that this passing reference to unnamed "people" identifying the blue Dodge Charger as a police vehicle created an "undue tendency to suggest decision on an improper basis," *Mott*, 187 Ariz. at 545 (citation omitted), or violated Rule 403. Accordingly, Ortiz has shown no error in the admission of this evidence.

### C.        The Superior Court Did Not Commit Fundamental Error by Allowing the State to Admit Evidence that Ortiz Had a Felony Warrant.

**¶19**        During the State's case in chief, without objection, Detective Shed testified about the warrant. He confirmed that Ortiz had a warrant outstanding at the time he fled from police officers in January 2024**.** When asked about the events on the date of the charged offenses, Detective Shed described his plan to have another officer box in Ortiz' car because he "had known the individual had a felony warrant and it was known that he had fled from me in the past." During redirect, when asked if he knew of the warrant when trying to capture Ortiz on the charged offenses, Detective Shed responded, "[t]hat is correct. I did have that." The State mentioned the warrant during closing argument, asserting Ortiz "sees vehicles coming into the car wash and he starts to leave. He starts to leave because he knows that he has a warrant or should know he has a warrant and he knows that he recognizes the vehicles."

**¶20**        Ortiz argues evidence of the warrant was inadmissible character evidence that was unfairly prejudicial, indicating he "was a serious criminal and therefore guilty" of the charged offenses regardless of

the trial evidence. Ortiz argues that, as in *State v. Green*, 110 Ariz. 293 (1974), "the evidence was highly prejudicial to the defendant's right to a fair trial and probably influenced the jury." *Green*, however, is distinguishable.

**¶21**      *Green* involved a conviction for the sale of narcotic drugs where the court denied defendant's motion for a mistrial when a witness for the State testified the defendant "was known to us as a dealer in narcotics." 110 Ariz. at 293-94. The Arizona Supreme Court found that testimony was not "competent to prove the crime charged," concluding that "[i]n a trial for the sale of narcotics in which the defense is entrapment, we feel that the remark made by the police officer was most certainly prejudicial." *Id.* at 294-95 (citation omitted).

**¶22**      Here, by contrast, Ortiz did not object at trial. Moreover, as the State notes, the fact that Ortiz had an outstanding warrant was relevant to whether he fled, and his motive to flee, for the unlawful flight charge. *See* A.R.S. § 28-622.01(2)(b); *see also* Ariz. R. Evid. 401. And as with evidence of his flight earlier in January 2024, he has not shown that the superior court was required, sua sponte, to preclude that evidence as unfairly prejudicial under Rule 403. On this record, Ortiz has not shown error, let alone fundamental error resulting in prejudice, from the admission of evidence regarding his outstanding warrant. *See Bearup*, 221 Ariz. at 168 ¶ 21.

## II.      There Was Sufficient Evidence that Ortiz Intentionally Placed Detectives in Reasonable Apprehension of Imminent Physical Injury.

**¶23**      Counts two and three alleged Ortiz committed aggravated assault with a dangerous instrument by intentionally placing the detectives in reasonable apprehension of imminent physical injury. *See* A.R.S. § 13-1203(A)(2). "Either direct or circumstantial evidence may prove the victim's apprehension. There is no requirement that the victim testify to actual fright." *State v. Wood*, 180 Ariz. 53, 66 (1994) (citation omitted).

**¶24**      Ortiz argues there was insufficient evidence he intentionally placed the detectives "in imminent fear as he was attempting to flee, as he did not 'ram' the cars but pushed them out the way in order to flee, and did not point his car in the direction of Detective Shed who was outside his vehicle." In making that argument, however, Ortiz concedes that "the officers testified that they were in fear." He adds, however, that "there was no evidence or reasonable inference that they were in reasonable fear of 'imminent physical injury' or that Ortiz intentionally place[d] them in such fear." In reviewing a sufficiency of evidence argument, this court considers

the evidence in the light most favorable to sustaining the conviction. *See State v. Pena*, 235 Ariz. 277, 279 ¶ 5 (2014) (citing cases).

**¶25**        Here, the jurors could reasonably find Detectives Shed and Upton were in reasonable apprehension of imminent physical injury. Detective Upton testified he was in fear when Ortiz started to run his vehicle into the detectives' vehicles, stating, "I was worried that either I or Detective Shed would get hurt." Detective Upton testified that, "if we were to ram a vehicle, that's treated as lethal force; and so when somebody rams us, we have to treat it in the same fashion."

**¶26**        This testimony properly allowed the jury to conclude that the detectives were in reasonable apprehension of imminent physical injury. *See, e.g.*, *State v. Sands*, 145 Ariz. 269, 275 (App. 1985) (victims' testimony that defendant's firing gun caused them "fear that another shot might injure them" was evidence of reasonable apprehension of imminent physical injury). In essence, Ortiz asks that the evidence considered by the jury be reweighed on appeal, something this court will not do. *See State v. Rodriguez*, 205 Ariz. 392, 397 ¶ 18 (App. 2003). On this record, sufficient evidence supported the fact that Ortiz intentionally placed the detectives in reasonable apprehension of imminent physical injury.

**III.    The Superior Court Did Not Commit Fundamental Error by Failing to Instruct the Jury on the Lesser-Included Offense of Disorderly Conduct for the Aggravated Assault Charges.**

**¶27**        When addressing jury instructions for the aggravated assault charges, Ortiz affirmatively told the superior court he was not requesting a lesser-included offense instruction on simple assault or assault without the use of a dangerous instrument or against a peace officer. At no time did Ortiz request a disorderly conduct lesser-included offense jury instruction. Now, on appeal, he argues the superior court committed fundamental error by failing to sua sponte give a disorderly conduct lesser- included offense jury instruction.

**¶28**        A court has no obligation to give a lesser-included offense instruction that the defendant has expressly rejected. *See State v. Krone*, 182 Ariz. 319, 323 (1995); *State v. Fish*, 222 Ariz. 109, 132 ¶¶ 79–80 (App. 2009). Moreover, in a case like this, the superior court had no obligation to sua sponte instruct the jury on a lesser-included offense. *See State v. Gipson*, 229 Ariz. 484, 487 ¶ 15 (2012) ("'In general the trial judge should withhold charging on lesser included offense[s] unless one of the parties requests it.'") (citation omitted). Accordingly, Ortiz has not shown that the superior

court committed fundamental error by failing to sua sponte instruct the jury, for the aggravated assault charges, on the lesser-included offenses of disorderly conduct.

## CONCLUSION

¶29 Ortiz' convictions and resulting sentences are affirmed.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:      JR